UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| CellTrust Corporation,<br>a Delaware Corporation,<br><br>        Plaintiff,<br><br>v.<br><br>ionLake, LLC,<br>a Minnesota limited liability company, *et al.*,<br><br>        Defendants. | Case No. 19-cv-2855 (WMW/TNL)<br><br><br>ORDER |

## I. INTRODUCTION

This matter comes before the Court on Plaintiff CellTrust Corporation's ("CellTrust") Motion for Sanctions Against Defendants, ECF No. 128. A hearing was held. ECF No. 146. Richard E. Oney, Loren L. Hansen, and Rebecca Ruegg-Lerner appeared on behalf of CellTrust. Donald W. Niles and Casey Allen Kniser appeared on behalf of Defendants ionLake, LLC, Derrick Girard, and Wade Girard (collectively, "ionLake").

## II. LEGAL STANDARD

CellTrust's motion implicates the Court's broad discretion in handling pretrial procedure and discovery. *See, e.g.*, *Hill v. Sw. Energy Co.*, 858 F.3d 481, 484 (8th Cir. 2017) ("A district court has very wide discretion in handling pretrial discovery . . . ." (quoting *United States ex rel. Kraxberger v. Kansas City Power & Light Co.*, 756 F.3d 1075, 1082 (8th Cir. 2014)); *Solutran, Inc. v. U.S. Bancorp*, No. 13-cv-2637 (SRN/BRT),

1

2016 WL 7377099, at *2 (D. Minn. Dec. 20, 2016) ("Further, magistrate judges 'are afforded wide discretion in handling discovery matters and are free to use and control pretrial procedure in furtherance of the orderly administration of justice.'" (internal quotation marks omitted) (quoting *Favors v. Hoover*, No. 13-cv-428 (JRT/LIB), 2013 WL 6511851, at *3 n.3 (D. Minn. Dec. 12, 2013)). This Court has "wide discretion to fashion a remedy or sanction as appropriate for the particular circumstances of the case." *Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008); *cf., e.g., Bergstrom v. Frascone*, 744 F.3d 571, 576 (8th Cir. 2014) (discovery sanctions reviewed for abuse of discretion); *Keefer v. Provident Life & Accident Ins. Co.*, 238 F.3d 937, 940 (8th Cir. 2000) (same).

### III. DISCOVERY CONDUCT

Pursuant to Rule 37 of the Federal Rules of Civil Procedure and Local Rule 1.3, Cell Trust seeks sanctions in connection with certain discovery-related conduct. The Court addresses each in turn.

**A. Blanket AEO Designation of ESI Production**

    1. **Background**

        a. **Discovery Orders**

The parties filed a stipulation regarding the discovery of confidential or proprietary information in this case, upon which and pursuant to Rule 26(c) of the Federal Rules of Civil Procedure the Court entered a Protective Order.[1] *See generally* ECF No. 42; Protective Order, ECF No. 46. The Protective Order permitted a party to

---

[1] An Amended Protective Order was subsequently entered, but those amendments do not bear on the issues at hand. *See generally* ECF Nos. 121, 122.

2

designate a document "as confidential if the party . . . contends that it contains confidential or proprietary information." Protective Order ¶ 2(a). A party was permitted to "supplement the 'confidential' mark" with an attorney's-eyes-only ("AEO") designation, further restricting access to the confidential document. Protective Order ¶ 3(c).

The parties also filed a stipulation regarding the discovery of electronically stored information ("ESI"), which was subsequently adopted by the Court as an agreement of the parties. *See generally* ESI Stip., ECF No. 43; ECF No. 47. Among other things, the parties agreed that they would "meet and confer about methods to search ESI in order to identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery." ESI Stip. ¶ 4. Search terms were to "be narrowly tailored to particular issues" and the parties were "encourage[d] . . . to confer on a process to test the efficacy of search terms." ESI Stip. ¶ 5.c. Additionally, the parties indicated their "aware[ness] of the importance the Court places on cooperation and commit[ted] to cooperat[ing] in good faith throughout th[is] matter." ESI Stip. ¶ 2.

b.   **CellTrust's Discovery Requests & Search Terms**

The deadline for fact discovery was July 1, 2021. *See, e.g.*, Pretrial Sched. Order ¶ 2.b, ECF No. 37; Am. Pretrial Sched. Order ¶ 2.b, ECF No. 41. On May 28, approximately one month before the close of fact discovery, CellTrust served its first request for production of documents. Decl. of Richard E. Oney ¶ 2, ECF No. 132; Decl. of Donald W. Niles ¶ 4, ECF No. 142. ionLake responded by stating that it would produce responsive, non-privileged material subject to, among other things, the parties'

3

obligation to meet and confer regarding the search and production of ESI. Oney Decl. ¶ 2.

Around mid-July, counsel for CellTrust e-mailed counsel for ionLake, stating that the parties "still need to meet and confer regarding production of ESI and search terms" and requesting availability.[2] Ex. 2B at 2 to Oney Decl., ECF No. 132-3. The parties met and conferred approximately one week later and, on July 21, CellTrust provided its search terms to ionLake. Oney Decl. ¶ 5; *see generally* Ex. 3 to Oney Decl., ECF No. 132-5; *see also* Niles Decl. ¶ 6; *see also generally* Ex. 1 to Niles Decl., ECF No. 142-1.

### c.   ionLake's ESI Production

The parties agreed that they would complete their exchange of documents and ESI production on August 23 and, on August 23, ionLake made its ESI production. ECF No. 89 ¶ 3.a; Oney Decl. ¶ 8; Niles Decl. ¶ 13; Decl. of Casey A. Kniser ¶ 8, ECF No. 141. ionLake's ESI production consisted of more than 35,000 documents, totaling over 400,000 pages. Oney Decl. ¶ 8; Kniser Decl. ¶ 6; *see* Niles Decl. ¶ 11. There is no dispute that all of ionLake's ESI production was designated AEO under the Protective Order. *See, e.g.*, Oney Decl. ¶ 8; Niles Decl. ¶ 13; Kniser Decl. ¶ 8.

ionLake's ESI production was accompanied by the following explanation:

> Please note that this ESI production of ionLake's documents has been designated Confidential: Attorney's Eyes Only. Because of the necessity of meeting the agreed August 23,

---

[2] To the extent CellTrust asserts that it attempted to meet and confer on June 1 or 25 with ionLake regarding *CellTrust's* search terms, the correspondence cited expressly refers to meeting and conferring regarding *ionLake's* search terms, not CellTrust's. Ex. 1 at 2 to Oney Decl. ("I had mentioned that we would need to meet and confer about search terms for ionLake's document requests."), ECF No. 132-1; Ex. 2A at 2 to Oney Decl. ("As an aside, I also see in that email I reiterated that the parties needed to meet and confer about ionLake's document requests and repeated CellTrust's request for proposed search terms."), ECF No. 132-2.

> 2021 production date and to avoid separation of related information during production, all documents have been so designated. Upon request, ionLake is willing to review and re-designate specific documents or parts of documents if appropriate and not otherwise subject to a duty of confidentiality or NDA.

Ex. 7 at 2 to Oney Decl., ECF No. 132-7.

CellTrust's preliminary review of ionLake's ESI production revealed numerous public documents, including copies of the pleadings, patents, newsletters, and magazines. Ex. 8 at 2 to Oney Decl., ECF No. 132-8; *see* Pl.'s Mem. in Supp. at 3, ECF No. 129. When confronted about the blanket designation, ionLake explained that "[t]he AEO designation was necessitated by [CellTrust's] insistence on the August 23 production deadline and CellTrust's grossly over encompassing search terms provided well after the July 1, 2021 fact discovery cutoff date." Ex. 9 at 2 to Oney Decl., ECF No. 132-9. "Rather than delay production and quibble about the search terms, [ionLake] produced the 35,417 documents, 416,375 pages [CellTrust's] ESI terms resulted in." Ex. 9 at 2 to Oney Decl. ionLake repeated its willingness to "consider redesignation of any documents [CellTrust's] searches indicate are useful to [it] and that [it] believe[s] should be redesignated." Ex. 9 at 2 to Oney Decl. ionLake stated that it did "not believe CellTrust's search terms were reasonable or resulted in a document collection proportional to the needs of the litigation" and was "willing to discuss narrowing of [CellTrust's] search terms so that a reasonable document collection result can be specifically reviewed for confidentiality." Ex. 9 at 2 to Oney Decl.

5

### d. Post-Production Meet & Confer & Redesignation

The parties met and conferred regarding ionLake's ESI production. *See* Kniser Decl. ¶ 9; Pl.'s Mem. in Supp. at 9; Niles Decl. ¶ 14; Defs.' Mem. in Opp'n at 4, ECF No. 140. On September 4, "[a]fter approximately 30 hours [were] spent reclassifying ionLake's document production," ionLake served an updated production via an electronic link. Kniser Decl. ¶ 10; Decl. of Lori Martin ¶ 6, ECF No. 134.

The electronic link by which ionLake delivered its updated production expired after one week. Kniser Decl. ¶ 11; Ex. 10 at 1 to Oney Decl., ECF No. 132-10. ionLake was also notified when a person with whom the link had been shared accessed the production for the first time. Kniser Decl. ¶ 11. The vendor records for the electronic link showed that the link expired without being accessed. Kniser Decl. ¶ 11. Believing CellTrust had not yet accessed the updated production before the link expired, ionLake shared the link for its updated production again on September 13. Kniser Decl. ¶ 13. Although the vendor records reflected there had been no access, CellTrust had in fact downloaded ionLake's updated production on September 8. Ex. 10 at 1 to Oney Decl.; *see* Oney Decl. ¶ 13.

### 2. Duty of Good Faith

Courts have held that there is an implicit duty of good faith in Rule 26(c) and the designation of documents under a protective order. *See, e.g.*, *Storagecraft Tech. Corp. v. Persistent Telecom Sols.*, No. 2:14-CV-76-DAK, 2016 WL 6988819, at *2 (D. Utah Nov. 29, 2016); *Acuity Brands Lighting, Inc. v. Bickley*, No. 5:13-CV-366-DLB-REW, 2015 WL 12976102, at *2 (E.D. Ky. Sept. 4, 2015); *Procaps S.A. v. Pantheon Inc.*, No. 12-

6

24356-CIV-GOODMAN, 2015 WL 4430955, at *6 (S.D. Fla. July 20, 2015); *Healthtrio, LLC v. Aetna, Inc.*, No. 12-cv-03229-REB-MJW, 2014 WL 6886923, at *3 (D. Colo. Dec. 5, 2014); *Paradigm Alliance, Inc. v. Celeritas Techs., LLC*, 248 F.R.D. 598, 605 (D. Kan. 2008); *In re ULLICO Inc. Litig.*, 237 F.R.D. 314, 317 (D. D.C. 2006); *cf. Edwards Vacuum, LLC v. Hoffman Instrumentation Supply, Inc.*, No. 3:20-cv-1681-AC, 2021 WL 186932, at *2 (D. Or. Jan. 19, 2021) ("[A] party's confidentiality designations must be reasonably and narrowly tailored to protect the confidential information the party seeks to shield from further disclosure."). "The duty of good faith in the protective order is a duty to review the documents in good faith *before* designating them as AEO." *Paradigm Alliance*, 248 F.R.D. at 605; *accord Storagecraft Tech. Corp.*, 2016 WL 6988819, at *2.

There is no "specific bright line test to determine when a party's designation of discovery as AEO in excess of a certain percentage is deemed presumptively improper." *Procaps*, 2015 WL 4430955, at *7; *accord Storagecraft Tech. Corp.*, 2016 WL 6988819, at *2; *Acuity Brands Lighting*, 2015 WL 12976102, at *2. Courts have, however, "condemned parties who have designated 79% or more of their discovery as []AEO." *Storagecraft Tech. Corp.*, 2016 WL 6988819, at *2 (citing cases); *see Acuity Brands Lighting*, 2015 WL 12976102, at *2; *Procaps*, 2015 WL 4430955, at *7; *see, e.g.*, *Storagecraft Tech. Corp.*, 2016 WL 6988819, at *3 (92%); *Acuity Brands Lighting*, 2015 WL 12976102, at *2 (100%); *Procaps*, 2015 WL 4430955, at *7 (95%); *Healthtrio*, 2014 WL 6886923, at *3 (90%); *THK Am. Inc. v. NSK Co. Ltd.*, 157 F.R.D. 637, 645 (N.D. Ill. 1993) (at least 79%). There is no dispute that ionLake designated 100% of its ESI production—at least at the outset—as AEO.

ionLake does not attempt to claim that the entirety of its ESI production should be designated under the more restrictive AEO classification. Rather, ionLake essentially argues it was substantially justified in designating the documents as such under the circumstances. ionLake contends its initial ESI production was "given a preliminary AEO designation only for the sake of expediency." Defs.' Mem. in Opp'n at 2; *see also, e.g.*, Defs.' Mem. in Opp'n at 3-4 ("ionLake marked the documents as [AEO] only so that they could be disclosed without delay to CellTrust's attorneys and experts"). ionLake contends that it "acted in good faith to get CellTrust a huge ESI production that was huge not because ionLake was engaging in a 'document dump,' but rather because of CellTrust's broad search terms." Defs.' Mem. in Opp'n at 2. According to ionLake, it was responding to "the logistical problems created by ESI search terms that returned roughly 35,000 responsive documents" and "it was important for the parties to confer and decide whether all 35,000 documents were really needed by CellTrust." Defs.' Mem. in Opp'n at 9.

Were there evidence in the record before the Court that ionLake had made efforts to meet and confer with CellTrust regarding its search terms and was repeatedly rebuffed, or, after having gathered ESI pursuant to those search terms and becoming aware of the volume of responsive information, ionLake attempted to meet and confer with CellTrust regarding the scope of production in light of the needs of the case, ionLake might have a stronger argument. Yet, ionLake was in possession of CellTrust's search terms for more than one month and did not take issue with them. It was only when CellTrust objected to ionLake's blanket designation that ionLake complained CellTrust's search terms were

"grossly over encompassing," unreasonable, and disproportionate to the needs of this litigation. Ex. 9 at 2 to Oney Decl.

The Court understands that ionLake's production did not occur in a vacuum and the parties may have been concentrating their efforts on other aspects of this and related litigation at the time. Based on information at the hearing, the Court also recognizes that ionLake did not become aware of the volume of responsive information until, at most, two days before the parties' agreed-upon production deadline. But, "[t]he alleged burden imposed by a high volume production does not provide the producing party or its counsel free reign to choose a given designation and ignore the Court's order pertaining to that designation." *Brown v. Tellermate Holdings Ltd.*, No. 2:11-cv-1122, 2014 WL 2987051, at *22 (S.D. Ohio July 1, 2014), *adopted as modified*, 2015 WL 4742686 (S.D. Ohio Aug. 11, 2015) [hereinafter *Brown II*]. Again, were there evidence in the record that ionLake attempted to meet and confer with CellTrust and explore possible solutions once it realized the volume of responsive information, ionLake might have a stronger argument.

Moreover, nothing in ionLake's cover communication indicated that the blanket AEO designation was intended to be "preliminary." *See, e.g.*, Defs.' Mem. in Opp'n at 2 ("After an initial production of about 35,000 emails and attachments, which were given a preliminary AEO designation only for the sake of expediency, . . . ."); 9-10 ("The preliminary AEO production allowed CellTrust to make this assessment."). Nor does the record reflect an "understanding that the documents would be redesignated." Defs.' Mem. in Opp'n at 9. While ionLake may have expressed a willingness to review and

9

redesignate documents "[u]pon request," Ex. 7 at 2 to Oney Decl., it essentially "shift[ed] the cost of review of confidentiality" to CellTrust. *Del Campo v. Am. Corrective Counseling Servs., Inc.*, No. C-01-21151 JW (PVT), 2007 WL 3306496, at *4 (N.D. Cal. Nov. 6, 2007); *accord Procaps*, 2015 WL 4430955, at *7.

ionLake attempts to distinguish its "good-faith redesignation" from cases in which a party did not redesignate the documents in question until ordered to do so. Defs.' Mem. in Opp'n at 8. True, ionLake has since "re-designated and re-produced its production after consulting with CellTrust." Defs.' Mem. in Opp'n at 8. But, based on the record before the Court, it can hardly be said that ionLake acted in good faith when it designated as AEO the entirety of its ESI production in the first place. Moreover, the fact that ionLake was able to clean up its production in a relatively short period of time after meeting and conferring with CellTrust says more about what should have taken place than it does any remedial acts by ionLake. *See Humphreys v. Regents of Univ. of Cal.*, No. C-04-03808 SI (EDL), 2006 WL 3020902, at *3 (N.D. Cal. Oct. 23, 2006) ("In fact, once the parties met and conferred after the motion was filed, Defendants greatly reduced the scope of the documents they sought to have designated as confidential. This effort was too little, too late, and demonstrates that Defendants did not designate documents in good faith in the first place."). To say nothing of the logistical restraints caused by and possibly obstructionist nature of ionLake's initial blanket AEO designation, particularly in light of impending deadlines agreed to by the parties. *See In re ULLICO Inc. Litig.*, 237 F.R.D. at 317-18 (improper designation can result in "a strategic advantage," "unnecessary logistical restraints," and "multiplie[d] . . . obstacles"); *THK Am.*, 157

F.R.D. at 647 ("Courts are too overburdened with heavy caseloads and backlogs to be taxed by parties engaging in uncooperative, dilatory, and obstructionist litigation tactics, or similar stratagems to increase the litigation expenses of the opposing party.").

### 3. Sanction for Blanket AEO Designation

CellTrust requests that the Court order ionLake to re-review its ESI production and re-designate its documents in good faith as well as pay CellTrust's reasonable expenses, including attorney's fees, incurred in reviewing ionLake's ESI production with the blanket AEO designations.  As stated above, redesignation and reproduction has already occurred.

Under Rule 37(b)(2), the Court may impose sanctions on a party "who fails to obey an order to provide or permit discovery," including attorney fees. Fed. R. Civ. P. 37(b)(2)(A), (C).  Courts have imposed sanctions under Rule 37(b)(2) for over-designation of documents in contravention of a protective order. *See, e.g.*, *Acuity Brands Lighting*, 2015 WL 12976102, at *2; *Brown II*, 2015 WL 4742686, at *6; *Del Campo*, 2007 WL 3306496, at *4; *see also Procaps*, 2015 WL 4430955, at *10; *Broadspring, Inc. v. Congoo, LLC*, No. 13-CV-1866, 2014 WL 4100615, at *22 (S.D. N.Y. Aug. 20, 2014); *Humphreys*, 2006 WL 3020902, at *3; *THK Am.*, 157 F.R.D. at 651; *cf.* Fed. R. Civ. P. 37 advisory committee's note to 1970 amendment ("The scope of Rule 37(b)(2) is broadened by extending it to include any order 'to provide or permit discovery,' including orders issued under Rules 37(a) and 35.  Various rules authorize orders for discovery—*e.g.*, Rule 35(b)(1), Rule 26(c) as revised, Rule 37(d).  Rule 37(b)(2) should provide comprehensively for enforcement of all these orders." (citation omitted)).

11

Further, the Protective Order itself provides for attorney fees as a sanction for non-compliance. Protective Order ¶ 13.

The Court concludes that ionLake's blanket AEO designation of its ESI production did not comport with the implicit duty of good faith under Rule 26(c) and contravened both the spirit and terms of the Protective Order. Pursuant to Rule 37(b)(2)(C) and the remedial provision of the Protective Order, the Court sanctions ionLake in the amount of $1,000.00. Such amount shall be paid to CellTrust within 30 days from the date of this Order. To the extent CellTrust seeks greater monetary sanctions, it is this Court's view that any greater award would have little if any positive effect, and would serve only to embolden further the recipient party, entrench the parties in their respective positions, and increase the costs of this litigation, making such an award unjust under the circumstances.

To the extent CellTrust seeks sanctions in connection with the September 13 "republication" of the September 4 link as evidence of "continued improper [AEO] designations" by ionLake, Pl.'s Mem. in Supp. at 9, such request is denied. The Court inquired of ionLake's counsel at the hearing whether, as officers of the Court, counsel could represent that the September 4 production was identical to the September 13 production. Counsel responded without hesitation, equivocation, or qualification that the productions were identical. It will likely never be known why the records of ionLake's vendor did not reflect CellTrust's access of the September 4 link. The record before the Court reflects that ionLake's counsel attempted to extend a professional courtesy to CellTrust based on information known to counsel at the time. While that gesture may

have ultimately been based on incomplete information from a third-party vendor, it is not indicative of gamesmanship.

### B. Privilege Log Issues

CellTrust asserts that numerous "entries [in ionLake's privilege log] referenced communications with or documents of third parties that have not been identified as an attorney, agent, or current or former employee of ionLake," including a significant portion of which included "documents and communications with individuals known to CellTrust to be employed by third parties that are neither attorneys nor agents of ionLake." Pl.'s Mem. in Supp. at 10; *see* Decl. of Rebecca Ruegg-Lerner ¶¶ 4-5, ECF No. 133.

CellTrust met and conferred with ionLake regarding the purportedly questionable entries approximately one week after it received ionLake's privilege log. This conversation was productive. *See* Pl.'s Mem. in Supp. at 11 ("Defendants['] counsel agreed to review the privilege log and the entries highlighted by CellTrust as questionable and to produce what Defendants' counsel may have included in the privilege log in error."). Approximately one week later, ionLake "reviewed all documents on the log" and redesignated many of them. Kniser Decl. ¶ 13; *see* Defs.' Mem. in Opp'n at 5.

CellTrust seek sanctions in connection with its review of ionLake's privilege log. CellTrust argues that, even though Defendants agreed to look at the entries in question, "a month had already passed since the stipulated production date and CellTrust had already incurred the expense and time to find and point out those privilege concerns." Pl.'s Mem. in Supp. at 11. The Court finds CellTrust's argument to have particularly problematic

13

implications for the meet-and-confer process. Notably, the parties met and conferred just a little over one week after ionLake provided its privilege log, and ionLake completed its review, redesignation, and production within approximately one week after that. Further, while CellTrust provides some description of certain entries it initially viewed as questionable, *see, e.g.*, Pl.'s Mem. in Supp. at 10-11; Ruegg-Lerner Decl. ¶ 5, CellTrust has not included ionLake's privilege log (or any amended versions) so that the Court can view the purportedly questionable entries in context. Nor has Cell Trust specifically identified which, if any, of the purportedly questionable entries continued to be unsupported following the parties' meet and confer. CellTrust's request for sanctions in connection with ionLake's privilege log is denied.

### C. Spoliation

In propounding discovery, CellTrust "expressly requested"[3] an "executive summary analysis," which Defendant Wade Girard referenced in a deposition taken "in a separate lawsuit between [Defendants] Derrick and Ward Girard." Pl.'s Mem. in Supp. at 11. This executive summary was apparently accompanied by some drawings. *See* Pl.'s Mem. in Supp. at 11-12; Oney Decl. ¶ 14. The executive summary was not included with ionLake's production and not identified in its privilege log. Pl.'s Mem. in Supp. at 11.

ionLake subsequently "agreed to produce the e-mail chain with the executive summary" after concluding the communications were not privileged. Pl.'s Mem. in Supp. at 11; Oney Decl. ¶ 14. At the time, ionLake believed the drawings "no longer exist[ed] as they were on a laptop that was wiped clean after [Defendant Wade Girard]

---

[3] CellTrust has not identified or included a copy of the relevant discovery request.

left ionLake." Oney Decl. ¶ 14. As stated at the hearing, however, ionLake circled back with Defendant Wade Girard, was able to confirm that there was only a single drawing accompanying the executive summary and locate that drawing, and produced it to CellTrust. *See* Defs.' Mem. in Opp'n at 6; Niles Decl. ¶ 20; Kniser Decl. ¶ 15; *see generally* Ex. 3 to Niles Decl., ECF No. 142-3. CellTrust confirmed that it had received the executive summary and the drawing, and ionLake represented at the hearing that everything regarding the executive summary had been produced.

CellTrust seeks sanctions for the spoliation of evidence and requests that the Court appoint an independent expert to conduct a forensic analysis of the laptop computer previously used by Defendant Wade Girard at ionLake's expense, asserting that the events concerning the executive summary "present question[s] whether there were other documents that were deleted from ionLake computers that [it does not] know about and may not know about." Pl.'s Mem. in Supp. at 16.

"The ultimate focus for imposing sanctions for spoliation of evidence is the intentional destruction of evidence indicating a desire to suppress the truth . . . ." *Greyhound Lines, Inc. v. Wade*, 485 F.3d 1032, 1035 (8th Cir. 2007). "A spoliation-of-evidence sanction *requires* a finding of intentional destruction indicating a desire to suppress the truth." *Id.* (quotation omitted) (emphasis added); *accord Sherman v. Rinchem Co., Inc.*, 687 F.3d 996, 1006 (8th Cir. 2012). The record before the Court does not support that spoliation occurred in this case—indeed, the allegedly spoliated document was located after additional investigation and ultimately produced. CellTrust's request is based on mere speculation. Accordingly, CellTrust's request for sanctions in

15

connection with spoliation of evidence will likewise be denied.

### D. Deposition Transcripts, Future Deterrence & Extension of Non-Dispositive Motion Deadline

In propounding discovery, CellTrust also "requested the transcripts and exhibits for depositions taken in the" litigation between Defendants Derrick and Wade Girard.[4] Pl.'s Mem. in Supp. at 12. In an e-mail sent a few days before CellTrust filed the instant motion, ionLake stated that it received access to the transcripts the day before and would process and produce them to CellTrust the following week. *See* Oney Decl. ¶ 16 ("We received access to these yesterday and will get them processed and produced next week."). ionLake reviewed the transcripts "for confidential information as designated in the original case" and, "[a]fter designating as confidential the pages and exhibits that were marked as confidential or under seal in their original context," ionLake produced the "4,530 pages" the following week. Kniser Decl. ¶ 16. CellTrust suggests this is evidence of "other delays in production" by ionLake, stating that ionLake produced the transcripts "nearly four months after they were initially requested." Pl.'s Mem. in Supp. at 12.

CellTrust is essentially asking the Court to infer that the time between when it requested the transcripts and when it ultimately received them was unreasonable. But, CellTrust has not provided the Court with any evidence to support such an inference. CellTrust has not, for example, put forth evidence that it repeatedly requested the transcripts from ionLake and, despite having them, ionLake refused to provide them until

---

[4] Again, CellTrust has not identified or included a copy of the relevant discovery request.

months later, or that such transcripts were repeatedly requested and ionLake was dilatory in its efforts to obtain them.  Rather, the only evidence in the record before the Court is that ionLake provided the transcripts to CellTrust the week after it received access to them as ionLake told CellTrust it would do.  True, Rule 34 generally requires a response to a request for production of documents within 30 days. Fed. R. Civ. P. 34(b)(2)(A). But, without some factual basis to support that this particular delay in this case was unreasonable, the Court is not inclined to infer that it was.

Similarly, on this record, the Court is not inclined to conclude that there has been a pattern of discovery abuses.  This litigation has been particularly contentious and each side has painted the other as being uncooperative.  While this case may not be the model of discovery practice, mere amalgamation of each frustration and dissatisfaction a party has with its opponent does not transform the ordinary (and oftentimes inconvenient) give and take of litigation into a pattern of discovery abuse.

Lastly, CellTrust's request for an extension of the non-dispositive-motion deadline so that it may "file non-dispositive motions should [ionLake] fail to produce documents they belatedly agreed to produce or that the Court orders them to produce" is denied.  By the time of the hearing, ionLake had already produced to CellTrust the documents it committed to producing and ionLake is not being ordered to produce additional materials. Should CellTrust feel it necessary to file such a motion after the non-dispositive-motion deadline has passed, CellTrust may show good cause in the ordinary course.  *See* Fed. R. Civ. P. 16(b)(4); *Petrone v. Werner Enters., Inc.*, 940 F.3d 425, 434 (8th Cir. 2019).

# IV. ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. CellTrust's Motion for Sanctions Against Defendants, ECF No. 128, is **GRANTED IN PART** and **DENIED IN PART**.

2. **Within 30 days from the date of this Order**, ionLake shall pay $1,000.00 to CellTrust in connection with the blanket AEO designation of its ESI production.

3. All prior consistent orders remain in full force and effect.

4. Failure to comply with any provision of this Order or any other prior consistent Order shall subject the non-complying party, non-complying counsel and/or the party such counsel represents to any and all appropriate remedies, sanctions and the like, including without limitation: assessment of costs, fines and attorneys' fees and disbursements; waiver of rights to object; exclusion or limitation of witnesses, testimony, exhibits and other evidence; striking of pleadings; complete or partial dismissal with prejudice; entry of whole or partial default judgment; and/or any other relief that this Court may from time to time deem appropriate.

Dated: May17, 2022

*s/ Tony N. Leung*
Tony N. Leung
United States Magistrate Judge
District of Minnesota

*CellTrust Corp. v. ionLake, LLC et al.*
Case No. 19-cv-2855 (WMW/TNL)