UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| CellTrust Corporation, *a Delaware Corporation*, | Case No. 19-cv-2855 (WMW/DJF) |
| Plaintiff, | **ORDER** |
| v. | |
| ionLake, LLC, *a Minnesota limited liability company*; Derrick Girard, *an individual*; and Wade Girard, *an individual*, | |
| Defendants. | |

---

This matter is before the Court on Plaintiff CellTrust Corporation's ("CellTrust") motion for judgment as a matter of law, (Dkt. 381), motion for new trial and to alter or amend judgment, (Dkt. 384), and Defendant ionLake, LLC ("ionLake"), Derrick Girard and Wade Girard's motion for attorneys' fees, (Dkt. 374).  For the reasons addressed below, the Court denies the motions.

## BACKGROUND

The full factual background of this litigation is set forth in previous orders of the Court and will not be repeated here.  Briefly, Plaintiff CellTrust, an Arizona company, providing mobile communications services for regulated industries, owns two patents essential to its business - United States Patent No. 9,775,012 (the '012 Patent) and No. 10,778,837 (the '837 Patent).  These patents, titled "System and Method for Tracking SMS Messages," describe a system to track mobile communications and meet audit compliance requirements.

Defendant ionLake, LLC, is a Minnesota limited liability company, and Defendants Derrick Girard and Wade Girard are ionLake's governing members.[1]  ionLake provides a service called MyRepChat, which permits users to track text message communications between a telephone and a virtual number associated with a mobile application.

CellTrust commenced this action in November 2019.  Counts I and II of the second amended complaint allege that ionLake has directly or indirectly infringed multiple claims in the '012 Patent and the '837 Patent, respectively, by making, using, offering for sale or selling the MyRepChat product or service.  Counts III and IV of the second amended complaint allege that Derrick Girard aided and abetted the infringement of the '012 Patent and the '837 Patent, respectively.  Count V of the second amended complaint alleges that Wade Girard aided and abetted the infringement of the '012 Patent.  Both ionLake and Derrick Girard assert counterclaims seeking declaratory judgment of noninfringement and invalidity as to the CellTrust Patents.

The parties dispute thirteen claim terms in the CellTrust Patents—seven terms that appear in the '012 Patent and six terms that appear in the '837 Patent.  The parties also cross-moved for summary judgment as to the invalidity of the CellTrust Patents and cross-moved to exclude expert testimony.  This Court granted in part CellTrust's motion for partial summary judgment on all bases except obviousness and denied Defendants' motion for summary judgment.

---

[1] For ease of reference, Defendants are referred to collectively as either "Defendants" or "ionLake" unless otherwise indicated.

The jury trial in this matter commenced on April 25, 2023 and was completed on May 4, 2023.  On May 16, 2023, judgment was entered in favor of Defendants, finding no infringement and that the asserted claims were invalid.  Defendants then filed a motion for attorneys' fees on May 30, 2023.  CellTrust filed a motion for judgment as a matter of law on June 12, 2023 and a concurrent motion for a new trial and to alter or amend judgment.

## ANALYSIS

### I.      CellTrust's Motion for Judgment as a Matter of Law

Judgment as a matter of law is appropriate "when 'a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue.'"  *Miller v. City of Springfield*, 146 F.3d 612, 614 (8th Cir.1998). (quoting Fed. R. Civ. P. 50(a)(1)).  The Court should not grant a motion for judgment as a matter of law "unless no reasonable juror, taking all reasonable inferences in the light most favorable to the opposing party, the nonmovant, could find against the moving party."  *In re RFC & ResCap Liquidating Tr. Action*, 399 F. Supp. 3d 804, 818 (D. Minn. 2019).

When reviewing a motion for judgment as a matter of law, the Court must resolve direct factual conflicts in favor of the nonmovant, assume as true all facts supporting the nonmovant which the evidence tended to prove, give the nonmovant the benefit of all reasonable inferences, and deny the motion if the evidence would allow reasonable jurors to differ as to the conclusions that could be drawn.  *Larson ex rel. Larson v. Miller,* 76 F.3d 1446, 1452 (8th Cir. 1996).

### A.      Patent Infringement

In a patent infringement dispute, it is the patentee's burden to prove infringement by a preponderance of the evidence. *Medtronic, Inc. v. Mirowski Fam. Ventures, LLC*, 571 U.S. 191, 198 (2014). Whether infringement has occurred is a question of fact that is reviewed for substantial evidence. *ACCO Brands, Inc. v. ABA Locks Mfrs. Co.*, 501 F.3d 1307, 1311 (Fed. Cir. 2007). To prove infringement, a plaintiff must prove the presence of each and every claim element in the accused device. *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 655 F.3d 1364, 1378 (Fed. Cir. 2011). When the Court entertains a motion for judgment as a matter of law, it considers all of the evidence presented, draws all reasonable inferences in favor of the non-moving party, and may not make credibility determinations or weigh the evidence." *Garcia v. City of Trenton*, 348 F.3d 726, 727 (8th Cir. 2003). For patent specific issues, courts review infringement for substantial evidence. *ACCO Brands*, 501 F.3d at 1311.

CellTrust contends that the asserted claims allow for either direct or indirect sending to an electronic discovery system ("EDS"), and do not require "directly" sending as Defendants argue. Specifically, CellTrust contends that the claims are met when the accused MyRepChat server sends communications to an EDS through an intermediate third-party server, as CellTrust asserts occurs for 75 percent of Defendants' customers in the email journaling and LPL configurations. CellTrust points to testimony from Defendant Derrick Girard admitting that 100 percent of customers send data to an EDS in one of three configurations. CellTrust asserts that the Court previously overruled Defendants' objection on this issue and ruled in CellTrust's favor during trial.

Defendants counter that the asserted claims require direct sending from the accused MyRepChat server to an EDS, without any intermediate third-party server. Defendants argue that CellTrust failed to prove direct sending at trial because CellTrust's expert did not examine the source code or operation of any customer configuration of the MyRepChat servers. Defendants point out that the claims recite "the server" or "the gateway" sending to the EDS/EIAS. And Defendants contend that the Court's prior statement during trial was made outside the presence of the jury and is not a definitive claim construction.

The asserted claims require "sending" or to "send" from the server or gateway to the EDS or EIAS. The claim language does not specify direct or indirect sending. CellTrust's expert did not analyze the operation of the accused MyRepChat servers to prove they send communications directly to an EDS. Based on the plain meaning of "sending" and the absence of an express "directly" limitation, the Court concludes that the asserted claims are not infringed if an intermediate third-party server sends the communication to the EDS/EIAS rather than directly to the accused MyRepChat server.

CellTrust argues that the only dispute as to infringement pertains to the legal issue of claim construction, which the Court already decided in CellTrust's favor during trial. Specifically, CellTrust points to the Court's decision to overrule Defendants' objection that the claims require "directly" sending, agreeing with CellTrust's position that the claims have no such limitation. CellTrust contends that Defendants improperly seek to add a "directly" limitation that is not present in the claims.

Defendants disagree, responding that it is CellTrust that improperly seeks a new, broadened construction post-trial that allows for indirect sending through intermediate

servers.  Defendants assert that they have maintained their position requiring direct sending to an EDS throughout the case, including in their non-infringement contentions.  The Court's statement during trial, Defendants argue, was made outside the presence of the jury and was not a definitive claim construction ruling.

The Court's statement overruling Defendants' objection was made outside the presence of the jury during trial and did not constitute a definitive claim construction ruling.  The Court was not asked to formally construe the claims prior to trial.  Based on the plain language of "sending" and to "send" in the asserted claims, which does not specify direct sending or indirect sending, the Court agrees that the claims require direct sending from the MyRepChat server to the EDS/EIAS.  This conclusion is consistent with Defendants' position in their non-infringement contentions throughout the case.

Based on the Court's analysis of the parties' claim construction positions pertaining to the "sending" and to "send" limitations, the Court concludes that substantial evidence supports the jury's verdict of non-infringement under Defendants' proposed construction requiring direct sending.  CellTrust cites the Court's statement during trial as supporting an indirect sending approach.  But that passing comment does not constitute a definitive claim construction ruling and does not override the plain language of the claims.

Critically, CellTrust's technical expert admitted he did not analyze the accused MyRepChat servers or customer configurations, leaving questions as to whether direct sending was established.  Moreover, issues remained as to whether CellTrust sufficiently proved Defendants possessed the requisite specific intent for a finding of induced

infringement. *MEMC Elec. Materials v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1378 (Fed. Cir. 2005).

For these reasons, the Court determines that reasonable jurors could have concluded based on the trial record that CellTrust failed to meet its burden to prove by a preponderance of the evidence direct or indirect infringement. Substantial evidence supports the jury's non-infringement finding. Accordingly, the Court denies CellTrust's motion for judgment as a matter of law as to infringement.

### B.    Invalidity

Invalidity must be proven by clear and convincing evidence. *Intel Corp. v. U.S. Int'l Trade Comm'n*, 946 F.2d 821, 830 (Fed. Cir. 1991). Whether a claim is invalid for obviousness under 35 U.S.C. § 103 is a legal conclusion based on underlying facts. *In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.*, 676 F.3d 1063, 1068-69 (Fed. Cir. 2012). The underlying factual inquiries include: (1) the scope and content of the prior art; (2) the differences between the prior art and the claims; (3) the level of ordinary skill in the art; and (4) objective considerations of nonobviousness. *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966).

On a motion for judgment as a matter of law, the court must "presume that the jury resolved the underlying factual disputes in favor of the verdict and leave those presumed findings undisturbed if they are supported by substantial evidence." *Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*, 688 F.3d 1342, 1356-57 (Fed. Cir. 2012). The ultimate legal conclusion of whether a claimed invention would have been obvious is reviewed *de novo*. *Id.* at 1357.

Citing *Finnigan Corp. v. Int'l Trade Comm'n*, 180 F.3d 1354, 1367 (Fed. Cir. 1999), CellTrust argues that Federal Circuit precedent requires corroboration of all witnesses testifying to invalidate a patent, even disinterested expert witnesses like Defendants' expert Mr. Antonov.  CellTrust contends that Mr. Antonov provided no evidence to corroborate his alleged personal use of the Google products, which was the entire basis for Defendants' obviousness contention.

Defendants respond that corroboration is not required for an expert's testimony as to obviousness that is based on third-party prior art references.  In an attempt to distinguish *Finnigan* as involving an anticipation defense and interested party testimony, Defendants contend that the law only requires corroboration of interested party witnesses.  Defendants maintain that they provided extensive testimony and evidence corroborating Mr. Antonov's opinions, including from CellTrust's expert, Mr. Colburn, CellTrust's witnesses, and prior art references.

While the corroboration requirement originated in cases involving interested party inventors, *Finnigan* applied the requirement to a third-party witness testifying about alleged prior public use to invalidate the patent.  *Finnigan*, 180 F.3d at 1367-70.  And, in doing so, *Finnigan* acknowledged the skepticism applied to any witness who testifies based on past events without contemporaneous documentation.  *Id*. at 1367.  The need for corroboration is diminished, however, when analyzing a retained expert's opinions based on a review of documented third-party prior art references.  Mr. Antonov's status as Defendants' expert witness lessens the concern of self-interest animating the corroboration requirement.

Upon review of the record, the Court finds there was sufficient circumstantial evidence corroborating Mr. Antonov's testimony regarding the content of the prior art references and his obviousness opinions based on those references. This evidence includes testimony from CellTrust's witnesses regarding virtual phone numbers and archiving capabilities in the prior art, along with prior art patents and publications describing aspects of the relevant Google products. The Court, therefore, concludes that Defendants met the corroboration requirement.

CellTrust argues that the obviousness determination should be limited to the specific obviousness combinations and references presented through Mr. Antonov's testimony at trial. Specifically, CellTrust contends that Mr. Antonov testified that the asserted claims would be obvious based solely on his alleged personal use of the Google products Gmail, Google Voice, and Google Vault, either alone or in combination with the Attanasio patent. And for this reason, CellTrust asserts, Defendants cannot now cite unrelated testimony about other prior art to modify the grounds that Mr. Antonov relied upon.

Defendants respond that the ultimate obviousness determination depends on the scope of the relevant prior art as a whole, and not just the few discrete combinations discussed by Mr. Antonov. Defendants contend that testimony from CellTrust's witnesses and other prior art references, such as the Attanasio patent, also shed light on the state of the art at the time of invention and the differences between the prior art and claimed inventions.

The Court concludes that the obviousness inquiry encompasses the scope of the relevant prior art as a whole, including prior art that was not specifically addressed in

Mr. Antonov's combinations.  *See KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 418-20 (2007) (obviousness analysis "need not seek out precise teachings directed to the specific subject matter of the challenged claim").  To render the claims obvious, Mr. Antonov was not required to present every possible combination.  The additional testimony and references cited by Defendants provide context about the background knowledge and perspective of one skilled in the art that is pertinent to evaluating the obviousness of the claimed inventions.  However, the Court cautions that Defendants' reliance on prior art beyond what was specifically presented through Mr. Antonov is entitled to less weight, as those additional references were not directly relied upon as grounds for obviousness.

CellTrust next argues that Mr. Antonov failed to provide any substantive analysis or testimony with respect to certain limitations found in the asserted claims.  Specifically, as examples of claim language that Mr. Antonov ignored in his obviousness opinions, CellTrust points to the "determining a virtual number" steps in claims 7 and 23 of the '012 patent and the "gateway configured to track" limitation in claim 20 of the '837 patent.  CellTrust asserts that conclusory statements about the obviousness of the claims as a whole cannot overcome this lack of analysis on key limitations.

In response, Defendants contend that Mr. Antonov provided extensive, step-by-step testimony analyzing each of the asserted claims and their limitations.  Defendants argue that Mr. Antonov was not required to explicitly recite every limitation verbatim in his testimony in order to sufficiently explain why the claims as a whole were obvious.

Mr. Antonov was not required to recite the claim limitations word-for-word.  He was required, however, to address the substance of material limitations to fully analyze

obviousness.  Upon review of the record, the Court finds that Mr. Antonov provided sufficient testimony applying his prior art analysis to each claim as a whole to support the jury's obviousness verdict.  His opinions clearly address why one skilled in the art would have found the claims obvious based on his review of the prior art, even if he did not address to each and every limitation explicitly.  The testimony cited by CellTrust does not clearly establish that entire limitations were ignored or not addressed.

CellTrust next points to passing witness testimony about praise for CellTrust's products in the industry as evidence of secondary considerations of nonobviousness that CellTrust contends Defendants failed to rebut.

Defendants respond that CellTrust failed to introduce actual evidence tied to recognized secondary considerations factors.  CellTrust's expert conceded he did not provide any analysis of secondary considerations, Defendants argue.

To establish secondary considerations, CellTrust must present evidence linking the evidence of objective indicia to the asserted patent claims.  *Demaco Corp. v. F. Von Langsdorff Licensing Ltd.*, 851 F.2d 1387, 1392 (Fed. Cir. 1988).  Here, CellTrust's use of witness testimony was selective.  CellTrust did not provide the kind of substantial evidence normally required to establish secondary considerations, such as commercial success, long-felt need or industry praise.  CellTrust also failed to establish the required nexus between any alleged secondary considerations and the claimed inventions.  Indeed, CellTrust's expert acknowledged not providing any such analysis.  Therefore, Defendants were not required to rebut this issue.

Upon review of the trial record, the Court finds that substantial evidence supports the jury's verdict that the asserted claims of the CellTrust patents are invalid as obvious. As addressed above, the Court concludes that Mr. Antonov's testimony regarding invalidity based on third-party prior art references does not require the same level of corroboration as interested party inventor testimony. Sufficient circumstantial evidence was presented to meet the corroboration requirement for Mr. Antonov's opinions.

The Court also concludes that Defendants were not strictly limited to only the specific prior art combinations discussed by Mr. Antonov. The ultimate obviousness determination properly takes into account the scope of the prior art as a whole. While CellTrust identifies certain limitations that it argues Mr. Antonov failed to analyze, Mr. Antonov provided adequate testimony to convey his obviousness opinions as to the asserted claims when considered as a whole. Finally, CellTrust did not produce sufficient evidence regarding secondary considerations or establish the required nexus to the claimed inventions. The issue of secondary considerations was not decisively rebutted by Defendants' expert witness mainly because CellTrust failed to provide sufficient evidence in the first place to establish a nexus between the claimed inventions and the alleged secondary considerations.

Based on the evidence presented at trial, reasonable jurors could conclude that Defendants proved obviousness by clear and convincing evidence. The jury's validity findings are supported by substantial evidence. Accordingly, the Court denies CellTrust's motion for judgment as a matter of law that the asserted claims are valid.

## II.     CellTrust's Motion for New Trial

Following a jury trial, on the motion of any party, a district court may grant a new trial on all or some of the issues. *See* Fed. R. Civ. P. 59(a)(1)(A). But "a district judge is not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable." *King v. Davis*, 980 F.2d 1236, 1237 (8th Cir. 1992). The "trial judge may not usurp the functions of a jury." *White v. Pence*, 961 F.2d 776, 781 (8th Cir. 1992). A new trial is warranted only when "the verdict was so contrary to the evidence as to amount to a miscarriage of justice." *Butler v. French*, 83 F.3d 942, 944 (8th Cir. 1996).

### A.     Improper Arguments

CellTrust argues that Defendants made improper arguments that warrant a new trial. Such arguments include accusing CellTrust of abusing the patent system, misleading the Patent Office, willfully deceiving Defendants, hiding evidence, being self-enriching outsiders, and threatening Defendants' livelihoods, CellTrust contends.

Specifically, CellTrust contends that Defendants improperly referred to its patent portfolio as "weaponry"; accused CellTrust of misleading the Patent Office by not disclosing Google Voice; resurrected dismissed claims of willful deception regarding inventor Brian Panicko; improperly suggested CellTrust was "hiding" information through document redactions; and portrayed CellTrust as self-enriching outsiders threatening Defendants' livelihoods. Relying primarily on *Pavemetrics Sys., Inc. v. Tetra Tech, Inc.*, 2023 U.S. Dist. LEXIS 23310 (C.D. Cal. Jan. 23, 2023), CellTrust argues that the cumulative effect of the improper statements warrants a new trial.

In response, Defendants argue that CellTrust failed to properly object to most of the statements it now complains of, which constitutes waiver of those arguments under cases such as *Wichmann v. United Disposal, Inc.*, 553 F.2d 1104, 1106 (8th Cir. 1977). Defendants also contend that the isolated statements would not have led to a different trial result, so a new trial is not warranted. *See Billingsley v. Omaha*, 277 F.3d 990, 997 (8th Cir. 2002). Moreover, Defendants assert, the Court's jury instruction that attorney statements are not evidence cured any potential prejudice from the comments.

Defendants distinguish the *Pavemetrics* case factually, as it involved deliberate violations of a motion in limine order. Defendants argue that CellTrust seldom objected at trial and cannot establish that the verdict was a "plain miscarriage of justice" under the high standard for a new trial. *Lange v. Schultz*, 627 F.2d 122, 127 (8th Cir. 1980).

The Court's review of the record establishes that CellTrust did not properly preserve objections to all of the comments it now complains of post-trial. The Court's general instruction to the jury that attorney statements are not evidence along with the high threshold for a new trial weigh against finding reversible error here. While certain isolated statements were arguably improper, CellTrust has not shown that the statements permeated the entire trial or were so prejudicial as to have clearly affected the verdict. Unlike the deliberate violations of a motion in limine order that the *Pavemetrics* court found, Defendants' conduct at issue here does not rise to that level.

CellTrust has not established that the improper arguments, even if uncured, would have changed the result or caused a miscarriage of justice. The comments at issue here do not warrant a new trial under the applicable standards.

14

### B.    New Non-Infringement Arguments

In its motion, CellTrust argues that Defendants ambushed CellTrust at trial by presenting a new non-infringement argument that the accused MyRepChat system does not meet the "sending" limitations of the asserted claims for 75% of Defendants' customers. CellTrust points to the closing arguments of Defendants' counsel that for 75% of customers, MyRepChat does not directly send communications to an electronic discovery system.

CellTrust contends that this specific argument was not disclosed before trial in Defendants' non-infringement contentions or trial brief.  And CellTrust observes that Defendants' expert, Mr. Antonov, did not present this non-infringement opinion in his report or deposition.  CellTrust highlights Mr. Antonov's trial testimony disagreeing with Defendants' "directly" sending theory, stating the claims do not contain such a requirement. And CellTrust maintains that this new argument at closing ambushed and prejudiced CellTrust, so as to warrant a new trial.

In response, Defendants first argue that CellTrust waived any objection to the non-infringement argument in closing by failing to object at trial, citing *Billingsley*, 277 F.3d at 997.  Defendants contend the "sending" limitations were consistently disputed in the case, and consequently this was not a totally new argument.  And Defendants point to their non-infringement contentions broadly denying the "sending" elements.

Upon careful review of the record, the Court concludes that the specific 75 percent statistic argued at closing was a new theory that had not been disclosed before trial.  While Defendants are correct that the general "sending" limitations were disputed, Defendants' contentions did not detail the 75 percent customer argument.  And Mr. Antonov admitted

that he had not formed non-infringement opinions beyond the default configuration at the time of his deposition.

The closing argument went beyond Defendants' prior non-infringement theories in a manner that reasonably surprised CellTrust. Prejudice is apparent from the inability to fully respond to the specific customer percentage statistic. This situation is distinguishable from mere evolution of a defense theory. The prejudice was not incurable, however. CellTrust could have sought to mitigate the surprise claim-by-claim in its rebuttal closing argument. Additionally, the jury heard competing expert testimony on the "sending" limitations which it reasonably credited over CellTrust's expert.

While the new customer percentage argument should have been disclosed earlier, CellTrust has not shown a reasonable probability that the specific closing statement impacted the result so as to require a new trial. The Court is not persuaded that the closing remark alone warrants the extraordinary remedy of nullifying the full trial. Because Defendants' expert Mr. Antonov gave some non-infringement opinions on the "default configuration," this opened the door to him testifying more broadly at trial about non-infringement. The Court concludes that a new trial is unnecessary despite the previously undisclosed customer percentage.

### C.    Jury Instructions and Evidentiary Issues

CellTrust argues that the Court made prejudicial errors in the jury instructions and evidentiary rulings that warrant a new trial. First, CellTrust contends that the Court erred by rejecting its proposed instruction on the corroboration requirement for invalidity opinions based on witness testimony. Second, CellTrust asserts that the Court improperly

introduced a "new" requirement in the validity instruction without explanation.  Finally, CellTrust argues that the Court wrongly excluded as hearsay its evidence of industry awards related to the patented technology.  CellTrust cites cases such as *TypeRight Keyboard Corp. v. Microsoft Corp.*, 374 F.3d 1151 (Fed. Cir. 2004) and *Rambus Inc. v. Rea*, 731 F.3d 1248 (Fed. Cir. 2013) to argue decisions were prejudicial legal errors entitling it to a new trial.

Defendants respond that the Court acted within its discretion to reject CellTrust's proposed corroboration instruction and properly tailored the instructions as a whole. Defendants also contend that the passing reference to "new" in the validity instruction matches the model instructions and caused no confusion.  Finally, Defendants assert that CellTrust failed to establish relevance and foundation for the undisclosed awards evidence, which was hearsay.  Defendants argue that CellTrust shows no prejudicial legal error in the Court's instructions or evidentiary rulings that would warrant a new trial.

A review of the record establishes that the Court's jury instructions as a whole accurately stated the law and were not misleading.  While CellTrust's proposed corroboration instruction had a basis in the law, the Court's decision not to include the instruction was not an abuse of discretion.  The jury instructions adequately explained the pertinent validity concepts.  Moreover, CellTrust has not established prejudicial error from the Court's evidentiary rulings.  The undisclosed awards were hearsay absent proper foundation, and any probative value was substantially outweighed by the prospect of unfair prejudice, confusion, and waste of time.

CellTrust has not shown that the jury instructions or evidentiary rulings were erroneous under the applicable legal standards, nor has CellTrust established that they improperly affected the outcome. These decisions made by the Court do not provide a basis for a new trial as the Court is not persuaded that the instructions or evidentiary issues resulted in prejudicial error to CellTrust or otherwise caused an injustice.

### D.    Claim Construction

In its motion, CellTrust argues that incorrect claim constructions by the Court, combined with Defendants' arguments, allowed the jury to erroneously find the asserted claims invalid as obvious. Specifically, CellTrust contends the Court erred by not construing the term "electronic-discovery system" and using the plain and ordinary meaning. CellTrust maintains that this allowed Defendants to argue incorrectly that the claims do not require an electronic discovery system. Additionally, CellTrust argues, the Court improperly construed "subscriber" merely as "user" rather than requiring a paying customer. Therefore, CellTrust contends the Court's claim construction rulings were prejudicial legal errors entitling it to a new trial.

In response, Defendants argue that claim construction was properly resolved before trial, and Federal Rule of Civil Procedure 59 does not allow CellTrust to rehash those issues post-trial. Defendants contend that the Court issued its claim construction order in September 2022, and CellTrust cannot now use a new trial motion to untimely reargue those determinations. Defendants assert that they were entitled to rely on the Court's constructions at trial and in closing arguments to the jury.

The Court concludes that claim construction was conclusively resolved before trial, and CellTrust may not use a new trial motion to reopen those issues. The Court's extensive claim construction order properly construed the disputed terms based on the claim language and intrinsic evidence. CellTrust had the opportunity to challenge those determinations before trial but did not properly do so. At trial and in closing arguments, Defendants were entitled to argue inferences from the Court's constructions, which must be accepted as governing law. CellTrust fails to show any prejudicial legal error in the Court's claim constructions themselves that warrant revisiting the issues post-trial. The Court's prior claim construction rulings do not provide a basis to disturb the jury's verdict or grant CellTrust a new trial.

The Court concludes based on the foregoing analysis that CellTrust has failed to establish any grounds warranting a new trial under Federal Rule of Civil Procedure 59. CellTrust did not properly preserve objections to many of the statements that it now challenges, and the isolated comments that it did preserve do not establish prejudicial error requiring a new trial. Additionally, CellTrust has not shown unfair surprise or incurable prejudice resulting from Defendants' non-infringement arguments.

The Court also identifies no legal error or abuse of discretion in its jury instructions and evidentiary rulings. Finally, claim construction issues were conclusively resolved before trial and may not be used to obtain a new trial. CellTrust has not met the substantial burden to show the jury's verdict was erroneous, resulted in a miscarriage of justice, or requires nullification based on prejudicial legal errors. CellTrust received a fair opportunity to present its case, and the jury rendered a reasonable verdict based on the

evidence and law.  There is a no basis in the record to grant a new trial.  Accordingly, the
Court denies CellTrust's motion for a new trial under Rule 59(a).  The jury's verdict shall
stand.

### III.    CellTrust's Motion to Alter or Amend Judgment

Federal Rule of Civil Procedure 59(e) allows a court to alter or amend a judgment
after its entry.  Only in extraordinary situations, in order to prevent a "plain miscarriage of
justice," will a reviewing court reverse a judgment based upon errors not objected to at trial.
*Lange*, 627 F.2d at 127.  The movant has a heavy burden to establish a manifest error of
law or fact or the existence of newly discovered evidence.  *United States v. Metropolitan
St. Louis Sewer Dist.*, 440 F.3d 930, 933 (8th Cir. 2006).  "[A] district judge is not free to
reweigh the evidence and set aside the jury verdict merely because the jury could have
drawn different inferences or conclusions or because [the judge believes] that other results
are more reasonable."  *King*, 980 F.2d at 1237.

Moreover, a Rule 59(e) motion "cannot be used to raise arguments which could, and
should, have been made" before judgment was issued.  *Bannister v. Armontrout*, 4 F.3d
1434, 1440 (8th Cir. 1993).  Rule 59(e) "serve[s] the limited function of correcting
'manifest errors of law or fact or to present newly discovered evidence.'"  *United States*,
440 F.3d at 933 (quoting *Innovative Home Health Care*, 141 F.3d at 1286).  In light of these
standards, relief under Rule 59(e) is an extraordinary remedy that is reserved for
exceptional circumstances.

In its motion, CellTrust argues that the Court should reverse the judgment and enter
judgment in its favor on infringement and validity based on the arguments in its motion for

judgment as a matter of law. Specifically, CellTrust contends that Defendants' non-infringement position regarding the "sending" limitations relies on an incorrect claim interpretation rejected by the Court at trial. CellTrust also asserts that Defendants failed to provide necessary corroboration for the obviousness opinion of its expert, Mr. Antonov, as required by law.

CellTrust asks the Court to overturn the jury's findings of non-infringement and invalidity as legally unsupported. If the Court enters judgment of validity in its favor, CellTrust contends it is entitled to a new trial on infringement, willful infringement and damages.

In response, Defendants argue that CellTrust fails to satisfy the heavy burden to show manifest errors of law or fact necessary to alter or amend a judgment under Rule 59(e). Defendants contend CellTrust merely seeks to repeat arguments that have been raised and rejected, which is improper under cases such as *Bannister*, 4 F.3d at 1440. Because the jury reasonably weighed the evidence at trial to reach a verdict supported by the record, Defendants argue, the Court should defer to the jury's findings.

CellTrust falls short of establishing exceptional circumstances requiring the extraordinary relief of altering the reasoned jury verdict under Rule 59(e). The Court agrees that CellTrust mainly seeks to relitigate issues the jury rationally resolved against CellTrust at trial. However, Defendants presented competent evidence on which the jury could reasonably find in their favor, including testimony disputing the scope of the "sending" limitations and Mr. Antonov's extensive invalidity analysis. The Court will fully address the sufficiency of the trial evidence when ruling on CellTrust's companion

motion for judgment as a matter of law.  But at this stage of the proceedings, the Court discerns no miscarriage of justice, manifest errors of law, or basis to displace the jury's determination.

While the parties argue competing inferences from the record, this disagreement does not satisfy the heavy burden to alter or amend the judgment.  The jury rendered a reasoned verdict after assessing witness credibility and weighing the trial evidence and arguments.  The Court perceives no foundation to set aside that judgment.  Accordingly, the Court denies CellTrust's motion to alter or amend the judgment under Rule 59(e).

## IV.   Defendants' Motion for Attorneys' Fee

Pursuant to 35 U.S.C. § 285, a court may award reasonable attorneys' fees to the prevailing party in "exceptional cases" in patent litigation.  *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 552 (2014).  A case may be deemed exceptional based on (1) the unreasonable manner in which the case was litigated or (2) if the litigation is objectively baseless.  *Id*. at 555.  District courts determine whether a case is exceptional on a case-by-case basis, considering the totality of the circumstances.  *Id*. at 554.  The Supreme Court rejected a heightened "objectively baseless" standard and "brought in [a] subjective bad faith" standard for exceptional cases.  *Id*. at 550.  An exceptional case determination does not require that the litigation misconduct be independently sanctionable. *Id*. at 555.

To be deemed a prevailing party, a defendant "need not prevail on the merits." *Raniere v. Microsoft Corp.*, 887 F.3d 1298, 1306 (Fed. Cir. 2018).  Rather, a defendant

must establish that the outcome of the case "rebuffs" the plaintiff's attempt to alter the parties' legal relationship. *Id*.

The totality of the circumstances is considered to determine whether a case "stands out" from others with respect to the substantive strength of a party's litigating position or the unreasonable manner in which the case was litigated. *Octane Fitness*, 572 U.S. at 554. All circumstances must be considered rather than relying on a single factor. *SRI Int'l, Inc. v. Cisco Sys., Inc.*, 930 F.3d 1295, 1309 (Fed. Cir. 2019). The analysis considers the conduct both during and throughout the entire litigation. *Id*.

### A.   CellTrust's Manner of Litigating the Case

Defendants argue that CellTrust's minimal document production of only 143 documents, with 114 redacted, was litigation misconduct and stands out as exceptional compared to Defendants' production of over 29,000 documents. Defendants cite *Adasa Inc. v. Avery Dennison Corp.* for the proposition that limited production can support an exceptional case finding.

*Adasa* is distinguishable, however, because the court based its finding on the plaintiff's specific failures to produce relevant information and documents concerning the accused products. 2021 WL 5921374, at *4. Here, Defendants have not identified any category of relevant documents that CellTrust failed to produce. Rather, CellTrust contends its limited production complied with the stipulated scope and that Defendants never challenged the sufficiency of the production or amount of redactions during discovery. CellTrust was not required to match Defendants' production volume, and the amount of production alone does not warrant a finding of an exceptional case absent

evidence that CellTrust withheld specific relevant documents. *See Adasa*, 2021 WL 5921374 at *4. Defendants cannot now complain of misconduct when they failed to raise any deficiencies during discovery.

Defendants also assert that CellTrust improperly redacted documents for relevance and confidentiality, leaving them unintelligible and preventing Defendants from obtaining relevant information. CellTrust maintains that the redactions were reasonably made out of concern that Defendants could access competitive information unrelated to the litigation. Defendants raised only one redaction issue during discovery, which was resolved between the parties. The fact that Defendants did not pursue any additional challenges to CellTrust's redactions undermines Defendants' argument that the redactions prevented access to relevant information. Defendants do not credibly allege misconduct now regarding redactions that Defendants failed to challenge during discovery. *See Stone Basket Innovations, LLC v. Cook Med. LLC*, 892 F.3d 1175, 1181-82 (Fed. Cir. 2018) (failing to notify plaintiff of alleged misconduct undermines late fee request). On this record, CellTrust's redactions do not appear to have been made in bad faith or prevented Defendants from obtaining relevant information.

Defendants contend that CellTrust submitted false responses to Requests for Admission regarding alleged priority date errors even though CellTrust's attorney declaration shows that CellTrust knew of potential errors. CellTrust maintains that its responses denying priority errors were true and consistent with CellTrust's position that no actual error exists. The attorney declaration does not conclusively establish knowledge of a concrete error. Rather, it discloses awareness of a "potential problem." The declaration

and RFA responses can be reasonably reconciled.  CellTrust was not required to concede the existence of a known error.  Defendants cannot establish clear litigation misconduct based on purported inconsistencies between the RFA responses and the attorney declaration when the evidence is inconclusive as to CellTrust's true knowledge at the time.

Defendants argue that CellTrust improperly pursued pre-suit damages despite there being no evidence of patent marking.  But CellTrust presented testimony showing that Defendants were aware of the asserted '012 patent and the associated product through a press release on CellTrust's website.  This provides at least some evidence related to marking and notice.  CellTrust also disputes that it conceded at trial that no marking evidence exists.  Although CellTrust ultimately may not have prevailed on its full damages claim, CellTrust had a good faith basis to present the marking issue to the jury.  Defendants have not shown litigation misconduct that warrants a finding of exceptionality.

Defendants also contend that CellTrust unreasonably maintained infringement claims against Wade Girard even though he was not involved with ionLake during the relevant timeframe.  But the evidence suggests that Wade Girard still held an interest in ionLake after February 2020, providing a basis for CellTrust's claim.  CellTrust also had grounds to seek injunctive relief against Wade Girard regardless of monetary damages.  Naming individual defendants is not by itself exceptional patent litigation conduct.  *See Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*, 806 F.2d 1565, 1578-79 (Fed. Cir. 1986).  Defendants have not shown that pursuing claims against Wade Girard was unreasonable or reflected bad faith.

CellTrust litigated the case reasonably and in good faith based on its available evidence and legal positions. Although CellTrust ultimately did not prevail, the manner in which CellTrust litigated the case does not present circumstances that are sufficiently unfair, unjust or improper to warrant a determination that it was exceptional.

### B.   Strength of CellTrust's Infringement Case

Defendants argue that the jury's finding of non-infringement shows weakness in CellTrust's case. However, the jury's verdict alone does not establish that CellTrust's infringement claims were exceptionally deficient. *See Checkpoint Sys., Inc. v. All-Tag Sec. S.A.*, 858 F.3d 1371, 1375 (Fed. Cir. 2017) (defense verdict does not necessarily warrant fee award). Importantly, Defendants never filed a motion for summary judgment of non-infringement, despite filing other summary judgment motions that were denied. The absence of a dispositive non-infringement challenge indicates Defendants did not view CellTrust's infringement case as exceptionally weak prior to trial. *See LendingTree, LLC v. Zillow, Inc.*, 54 F. Supp. 3d 444, 459 (W.D.N.C. 2014) (denying summary judgment motions mitigates exceptional case finding). If the claims clearly lacked merit, Defendants had the opportunity to pursue that issue before trial. Their failure to do so is inconsistent with their current assertion that CellTrust's case was exceedingly baseless or improper.

Defendants contend that CellTrust's technical expert, Mr. Colburn, lacked expertise and credibility regarding infringement. But Defendants did not move to exclude Mr. Colburn's testimony under *Daubert*, despite bringing other *Daubert* motions. This omission also suggests that Defendants did not view the expert opinions as fundamentally improper or unfounded before trial.

CellTrust argues that Mr. Colburn relied on appropriate materials, including Defendants' admissions, in forming his opinions. The fact that the jury ultimately disagreed with Mr. Colburn's conclusions does not prove that his testimony was groundless or made in bad faith. Disagreements as to expert credibility are common in patent cases. Defendants have not proven Mr. Colburn's opinions were exceptionally baseless or unfounded.

While CellTrust did not establish infringement to the jury's satisfaction, Defendants have not proven that the case was so plainly devoid of merit to warrant an exceptional case finding based on the substantive strength of the infringement claims. Indeed, the absence of any pretrial challenges to the infringement case weighs against a finding of exceptionality based on the merits of the claims.

### C.     Strength of CellTrust's Validity Case

Defendants also contend the jury's obviousness finding shows weakness in CellTrust's validity positions. However, as with non-infringement, Defendants did not move for summary judgment on the specific obviousness theories and alleged prior art combinations.

Defendants argue that CellTrust's expert, Mr. Colburn, ignored prior art and had no credibility regarding validity. CellTrust maintains that Mr. Colburn appropriately considered the admissible prior art evidence at trial when forming his validity rebuttal opinions and properly addressed the deficiencies in Defendants' expert's analysis. Mr. Colburn's disagreement with Defendants' characterization of the prior art does not establish that his opinions were fundamentally baseless or unfounded. Because differences

in expert interpretations of prior art are common in patent cases and do not inherently demonstrate exceptionality, Defendants' allegations alone do not establish that Mr. Colburn's testimony was exceptionally deficient.

Defendants also assert that CellTrust failed to present evidence of secondary considerations of non-obviousness.  But CellTrust introduced evidence pertaining to secondary considerations, including CellTrust's efforts in educating the market and the later arrival of competing products.  CellTrust also extensively cross-examined Defendants' expert and presented rebuttal testimony addressing obviousness.  CellTrust made a reasonable attempt to challenge Defendants' validity positions.  Defendants have not proven CellTrust's response was entirely unfounded or in bad faith.

Defendants have not established that the obviousness defenses presented at trial were so plainly strong that CellTrust's rebuttal was wholly unreasonable.  The validity issues do not present exceptional circumstances warranting fee-shifting under 35 U.S.C. § 285.

### D.    Totality of Circumstances

The Court must consider the totality of the circumstances, rather than any single factor, when determining whether a case is sufficiently exceptional to warrant attorneys' fees under 35 U.S.C. § 285.  *SRI Int'l,* 930 F.3d at 1309.  The totality of circumstances here does not support finding the case exceptional.

An important consideration is whether CellTrust had notice of the alleged deficiencies in its case.  Defendants did not provide any pre-trial notice that they considered this case exceptional or intended to pursue attorneys' fees.  *Stone Basket*, 892 F.3d at 1181

(lack of notice weighed against fee award).   For example, Defendants did not alert CellTrust that its manner of litigation was unacceptable.   Nor did Defendants suggest the claims or defenses were frivolous through early dispositive or *Daubert* motions.   The record does not indicate that CellTrust had any warning from Defendants that its litigation conduct or merits positions could be considered improper or unreasonable.   The lack of notice weighs strongly against deeming this case exceptional.

The Court also considers the amount of time and resources CellTrust invested to develop the patented technology and educate the relevant market.   CellTrust expended considerable efforts over several years to develop the patented inventions and convince the industry to adopt the new technology.   This degree of diligence and financial risk in advancing the technology disfavors deeming the case exceptional as to its outcome.

CellTrust contends that Defendants spent more litigating this case than CellTrust could afford.   The relative resource constraints may explain why CellTrust did not match Defendants' volume of discovery production.   If Defendants could aggressively litigate due to greater resources, that does not necessarily make CellTrust's positions unreasonable.   This potential disparity in party resources disfavors deeming the case exceptional.   *See Securacomm Consulting Inc. v. Securacom Inc.*, 224 F.3d 273, 279 (3rd Cir. 2000).

Naming Derrick and Wade Girard as individual defendants is not a basis for an exceptional case finding.   Adding corporate officers as defendants in patent cases is common and does not automatically render a case exceptional.   *Orthokinetics*, 806 F.2d at 1578-79.   CellTrust had a reasonable basis for including the individual defendants

associated with ionLake.  Their presence alone did not make the litigation improper or unfair.

The Court is granted discretion to determine whether a case is exceptional and award attorneys' fees under 35 U.S.C. § 285.  After considering the lack of notice, CellTrust's investment in the patented technology, the relative party resources, and propriety of including the individual defendants, the totality of the circumstances does not indicate this case stands out from others based on any unfair litigation tactics or baselessness of claims.  CellTrust litigated its infringement claims reasonably and in good faith based on the available evidence.  Defendants did not pursue dispositive challenges to CellTrust's infringement or validity positions prior to trial.  The trial record does not establish that CellTrust's manner of litigation was abusive or its expert opinions foundationless.  Furthermore, Defendants also failed to provide notice prior to this motion that the case could be deemed exceptional.  Therefore, the Court exercises its discretion to deny attorneys' fees under 35 U.S.C. § 285, concluding after reviewing the totality of the circumstances that this case does not stand out from others based on unreasonable litigation conduct or frivolous claims.

In addition, CellTrust invested heavily in developing the patented technology and educating the relevant market.  The relative resources available to each party weigh against rewarding Defendants for potentially overwhelming CellTrust in litigation.  Finally, naming individual defendants was not improper.  Overall, the high standard for establishing an exceptional case under 35 U.S.C. § 285 has not been met.  The totality of circumstances

does not warrant fee-shifting. *Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1328 (Fed. Cir. 2013) (fees only awarded for abusive litigation or bad faith claims).

Accordingly, Defendants' motion for attorneys' fees is denied.

## ORDER

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED**:

1. Plaintiff's motion for judgment as a matter of law, (Dkt. 381), is **DENIED**.

2. Plaintiff's motion for new trial and to alter or amend judgment, (Dkt. 384), is **DENIED**.

3. Defendants' motion for attorneys' fees, (Dkt. 374), is **DENIED**.

Dated:  December 6, 2023                                  s/ Wilhelmina M. Wright
                                                                    Wilhelmina M. Wright
                                                                    United States District Judge